# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# PIKEVILLE

**UNITED STATES OF AMERICA**                                      **PLAINTIFF**

**vs.**                                               Criminal No. 25-16-DLB-EBA

**JUSTIN BRYANT**                                                  **DEFENDANT.**

## SENTENCING MEMORANDUM

Defendant, JUSTIN BRYANT, submits this Sentencing Memorandum evaluating each one of the various factors under 18 U.S.C. § 3553(a) for the Court's consideration at the Sentencing hearing scheduled for February 9, 2026, at 9:30 a.m., in Ashland, Kentucky.

The court in determining the particular sentence to be imposed and the need for a variance, shall consider the factors found at 18 U.S.C. § 3553(a). These factors include; the nature and circumstance of the offense and the history and characteristics of the defendant, the need to reflect the seriousness of the offense, to promote respect for the law and provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed vocational or educational training, medical care, or other correctional treatment in the most effective manner.

The defendant humbly and respectfully petitions this Honorable Court to impose a sentence of incarceration that reflects the minimum term deemed appropriate, proportionate, and just in light of the nature and circumstances of the offense committed. The defendant acknowledges the gravity of his actions and seeks a sentence that aligns

with the principles of fairness and equity, taking into account the specifics of his case and any mitigating factors that may warrant the Court's consideration. By granting a term of imprisonment that is commensurate with the crime, the Court would uphold the balance between accountability and the opportunity for rehabilitation, ensuring a resolution that serves the interests of justice.

## **BACKGROUND – NATURE & CIRCUMSTANCES OF THE OFFENSE**

On or about March 27, 2025, the United States filed a four count indictment against the Defendant, alleging that on or about December 11, 2025, the Defendant possessed a detectable amount of methamphetamine, with the intent to distribute the methamphetamine, as well as being a felon in possession of a firearm, and possessing a firearm in the furtherance of a drug trafficking offense.  The fourth count in the original indictment alleges that on or about March 1, 2025, the Defendant possessed 50 grams or more of methamphetamine.

The essential facts of the case are as follows. At the time the traffic stop was initiated, the defendant was riding as a passenger in the back seat of the vehicle. The stop itself was conducted by Trooper Hall of the Kentucky State Police, who effected the stop based on an observed traffic-related issue involving the vehicle.  After being instructed to exit the vehicle and complying with that request, the Defendant was found to be in possession of a firearm. In addition, law enforcement discovered that the Defendant had on his person a small plastic baggie containing a white, powdery substance.

Count Four of the indictment alleged that, on or about March 1, 2025, the Defendant unlawfully fled from a traffic safety checkpoint that had been established at a designated and pre-approved location. According to Kentucky State Police Trooper Ball, the Defendant initially approached the checkpoint but, rather than proceeding through the traffic stop as directed, reversed course by backing down the roadway and then turning into the parking lot of a nearby restaurant. Trooper Ball further alleged that he pursued the Defendant and subsequently located him at the restaurant, where he was able to identify the Defendant. Trooper Ball stated that, upon making contact, he observed the Defendant to be in possession of methamphetamine. Following this encounter, the Defendant was taken into custody by law enforcement.

The defendant has taken full responsibility for his actions and is seeking a just and proper punishment that reflects the seriousness of his offense yet showing that he deserves a second chance with this Court. The defendant is facing a guideline sentencing range of one hundred and eighty months (180) to two hundred and twenty-five months (225) months.  The United States and the Defendant have entered into a binding plea agreement that includes a plea range more appropriately aligned with the offenses to which the Defendant has pled guilty.  The defendant has been continuously held in custody since the date of his arrest on March 1, 2025.

## **HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

Justin Kyle Bryant was born to the non-marital union of Mr. Jerry Cannon and Ms. Kelly Bryant.  The Defendant did not have a close or meaningful relationship with his father during his upbringing. Instead, he was raised primarily by his mother, with

significant support and involvement from his grandparents, who played an important role in his childhood and development.

Although the Defendant denies having been directly abused himself, he was exposed to significant trauma during his childhood. Specifically, he witnessed his mother being physically abused, and he also observed her ongoing struggles with addiction, experiences that had a profound impact on his upbringing. The Defendant also recalls that his half-sister was sexually abused by her father.

The Defendant was married in Pike County, Kentucky, in 2021, and that marriage ended in divorce in 2025. Following the dissolution of the marriage, the Defendant moved forward with his life and is currently in a stable and committed relationship with his fiancée, Ms. Jessica Adams.

Ms. Jessica Adams has submitted a letter on behalf of the Defendant, in which she provides a detailed account of his personal strengths while also openly acknowledging the challenges he has faced with substance abuse. In her letter, Ms. Adams emphasizes the Defendant's dedication and determination to regain and maintain his sobriety following any periods of incarceration. She highlights how, after his previous release from prison, the Defendant demonstrated a genuine ability to turn his life around, successfully achieving a period of sobriety and stability. Unfortunately, the Defendant faced a profound personal tragedy with the unexpected and violent death of his mother, an event that deeply affected him. Ms. Adams explains that, in the wake of this devastating loss, the Defendant struggled to cope with his grief, which ultimately contributed to a relapse into substance use. It was during this period of relapse that the events leading to the Defendant's current charges occurred. Through her letter, Ms. Adams underscores both

the Defendant's capacity for personal growth and recovery, as well as the unfortunate circumstances that contributed to the Defendant's current legal troubles.

The Defendant's daughter has also submitted a letter on his behalf, which provides further insight into the challenges and hardships the Defendant has faced throughout his life—challenges that contributed to the circumstances leading to his current situation. In her letter, she emphasizes that, in her view, her father is not inherently a violent person, and she expresses her strong belief that, if provided with the appropriate support, guidance, and structured opportunities, he is fully capable of achieving and maintaining the sobriety he has long sought. She also reflects on the profound impact that the deaths of his loved ones had on him, particularly the untimely death of his mother and the loss of his grandfather, who had served as the only true father figure in his life. According to her, these significant personal losses deeply affected the Defendant and played a central role in the struggles he faced, including his relapse into substance use. Her letter highlights both the Defendant's potential for rehabilitation and the contextual factors that have shaped his path, providing a personal perspective on his character, resilience, and capacity for positive change.

## **THE DEFENDANT MADE A HUGE MISTAKE IN HER LIFE**

Mr. Bryant made a serious mistake. He became addicted to drugs and sold them to support his habit. His addiction became his main priority, overshadowing everything else in his life.

But He has made amends in the past year. More than anything else, Mr. Bryant recognizes that he hurt himself and his family. He lost his freedom and the most important things to him. His child and his fiancée.

Mr. Bryant would be the classic person that needs to be punished, deterred, and rehabilitated, not convicted, warehoused, and forgotten. The need for the sentence to promote respect for the law and to provide just punishment can be attained by the Court granting a downward variance and sentencing Mr. Bryant, to a term below the guidelines and the minimum sentence required by the statutes.

## **THE DEFENDANT'S CRIMINAL HISTORY IS REPLETE WITH DRUGS**

The Pre-Sentence Report places Mr. Bryant at a Criminal History category of VI. She has nineteen (19) criminal history points. The defendants past criminal interactions are mostly drug related along with various misdemeanors and traffic cases in the Commonwealth of Kentucky. Mr. Bryant does have several felonies for drug related crimes. Going back to some of the factors outlined by a former Attorney General in his statements, Mr. Bryant has no ties to any gangs. Mr. Bryant is an addict first and foremost, who sold drugs to feed his drug habit. This is rather clear from the PSR.

Individuals like Mr. Bryant, who have faced profound personal challenges and adversity, are no less deserving of compassion and support when they stumble under the weight of their circumstances. Rather than subjecting Mr. Bryant to prolonged incarceration in a manner that amounts to mere warehousing, the justice system has a meaningful opportunity to prioritize rehabilitation and restorative measures tailored to his unique needs. Mr. Bryant's struggles—marked by the devastating loss of his grandfather

who was his only father figure and his mother in tragic accident demonstrate that he is not beyond redemption but rather a candidate for targeted rehabilitative efforts within a correctional setting. Such interventions could address his mental health needs, foster healing, and equip him with the tools to rebuild his life.

Mr. Bryant, a 35-year-old man, faces a potential sentence that, if set at the statutory minimum, would not result in him release from prison until the age of 50. An assessment of his likelihood of recidivism reveals a low risk, supported by a combination of empirical data, criminological research, and the rehabilitative opportunities available during incarceration. Several interconnected factors contribute to this evaluation, including his age, the impact of long-term incarceration, and the potential for personal growth through prison programs.

Age is one of the most significant predictors of criminal behavior, with extensive research demonstrating that recidivism rates decline markedly as individuals grow older. According to studies from the U.S. Sentencing Commission, older offenders—particularly those over the age of 60—exhibit significantly lower rates of reoffending compared to their younger counterparts. This trend is attributed to a variety of factors, including reduced impulsivity, greater emotional maturity, and a natural decline in physical capacity to engage in certain types of criminal activity. For Mr. Bryant, who is already 35, this age-related decline in recidivism risk is particularly relevant. By the time of his release at age 50, his likelihood of reoffending is expected to be even lower, as the data suggests that recidivism rates continue to decrease with advancing age.

Mr. Bryant's low risk of recidivism is supported by a combination of his advanced age, the rehabilitative opportunities available during his incarceration, and the social and

psychological factors that influence post-release behavior. The U.S. Sentencing Commission's findings on the inverse relationship between age and recidivism provide a robust empirical basis for this assessment, while the availability of educational, vocational, and therapeutic programs during his sentence further enhances his prospects for successful reentry. By the time of his release at age 50, Mr. Bryant is likely to have developed the skills, mindset, and social connections necessary to lead a law-abiding life, making him a low-risk candidate for recidivism.

During the last five fiscal years (FY2020-2024), there were 258 defendants whose primary guideline was §2D1.1 and Methamphetamine was the primary drug type, with a Final Offense Level of 31 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 256 defendants (99%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 84 month(s) and the median length of imprisonment imposed was 84 month(s).

Mr. Bryant's guideline sentence is one hundred and eighty (180) years to two hundred and twenty-five (225) months.  The statutory minimum will satisfy the factors found at 18 U.S.C. § 3553(a).

If the United States Department of Justice intends to make changes to fix our burgeoning prison problem, we need a place to start and someone to start this with, and Mr. Bryant, is probably the best candidate to do so.

The Defendant would respectfully ask the court that the make a recommendation to the Bureau of Prisons that he be housed as close to Pikeville, Kentucky as possible.

The defendant would also request the court to recommend that he complete the five hundred hour RDAP program.

    WHEREFORE, we would respectfully submit that the court grant the Defendant a sentence of minimum term of incarceration, followed by a term of five years supervised release, which is no more than necessary to promote respect for the law, yet at the same time be a deterrent for future criminal behavior.

    Respectfully submitted this 2nd day of February, 2026.

        JUSTIN BRYANT.
        By Counsel

        Very truly yours,

        JOY LAW OFFICE
        2701 Louisa Street
        P.O. Box 411
        Catlettsburg, KY 41129
        Telephone: (606) 739-4569
        Facsimile: (606) 739-0338
        Cell: (859) 488-1214

        __s/ Sebastian M. Joy_____
        Sebastian M. Joy, Esq.
        Counsel for Defendant JUSTIN BRYANT.
        Kentucky Bar # 92583
        West Virginia Bar # 10945
        E-mail: sjoy@joylawoffice.com
        Admitted in Kentucky & West Virginia

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**PIKEVILLE**

**UNITED STATES OF AMERICA**                                                          **PLAINTIFF**

**vs.**                                                            **Criminal No. 25-16-DLB-EBA**
**JUSTIN BRYANT**                                                                    **DEFENDANT.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing **SENTENCING MEMORANDUM** has been electronically filed with the Clerk of Court this date using the CM/ECF system and served upon opposing counsel as follows:

**VIA CM/ECF:**     Office of United States Attorney
                    London, KY

**DATE:**           February 2, 2026

                                            Very truly yours,

                                            JOY LAW OFFICE
                                            2701 Louisa Street
                                            P.O. Box 411
                                            Catlettsburg, KY 41129
                                            Telephone: (606) 739-4569
                                            Facsimile: (606) 739-0338


                                            __s/ Sebastian M. Joy_____
                                            Hon. Sebastian M. Joy
                                            Counsel for Defendant
                                            Kentucky Bar # 92583
                                            West Virginia Bar # 10945
                                            E-mail: sjoy@joylawoffice.com
                                            Admitted in Kentucky & West Virginia